Eott, J.,
delivered the opinion of the court:
Concerning the services rendered by the claimants to the defendants, the petition in this case contains the following allegations :
“At the request of the Government of the United States, to wit, of the War Department, this petitioning corporation transported, on and over its said railroad, for said Government, between March 31, 1874, and April 1, 1875, freight, for the *297 transportation of which said Government promised to pay the sum of fifty-six thousand one hundred and fifty-nine dollars and sixty-two cents, ($56,159.62,) and passengers, for whose transportation said Government promised to pay the sum of thirteen thousand three hundred and forty-two dollars and thirty-four cents, ($13,342.34,) making in all tire sum of sixty-nine thousand five hundred and one dollars and ninety-six cents, ($69,501.96,) which sum for said transportation the Government promised to pay this petitioning corporation as soon as said transportation teas performed, and which sum said Government of the United States has not paid to your petitioner, but neglects and refuses so to pay. The value or price of said transportation, as above stated, was ascertained by deducting from the usual fair and reasonable price or tariff for such transportation of freight and passengers one-third part thereof, which one-third part has long been agreed by said Government with your petitioner, and with other railroad companies which have received from the Government grants of land upon the same conditions in respect of such transportation as your petitioner, to be, and which in fact is', the share of said expense tvhich should be borne by the capital invested in, or expense of, the construction and maintenance of said road, considered as a liighioay; the remaining two-third parts being, as above agreed to be, no more than the just share of,said expense which is borne by said railroad company, in a manner pectoliar to railroad companies in distinction from any and all public highways, as such highways are generally known to the laws and to the public, to wit, such as the expense of maintaining carriages for such freight and passengers, of locomotive power for its transportation, of men to run said trains, and of the loading and unloading of said freight, with sundry other like expenses, none of which are generally borne by public highways.”
. To. this the defendants pleaded the general issue, and upon the trial the court found the following facts :
‘‘I. Prior to the Aet.malcing appropriations for the tise of the Army, 16th June, 1874, (18 Stat. L., 24,) the War Department employed to carry freight and passengers numerous railroads for whose construction grants of the public lands had been made upon the statutory condition that such roads ‘ shall be and remain public highways for the use of the Government of the ■ United States, free from all toll or other charge upon the transportation of any property or troops of the United States.’
*298 “ II. Upon careful consideration it was deemed by the Department that a deduction of one third from the rates at which other railroads agreed to transport public property and troops would be the equivalent of any toll or charge for the use of the road itself, and would be in accordance with the spirit and intent of the law. Upon this basis the work was done by the railroads and paid for by the Department.
“III. The claimant being one of the roads hereinbefore de-' scribed, at the request of the Quartermaster Department transported in its cars and over its road, and by means of its agents and servants, between the 31st of March, 1874, and the 1st of April, 1875, certain military freight and passengers for the use of the defendants; the value of such services at the ordinary tariff-rates of the road being the prices charged ordinarily for like services; and the value at the reduced rate previously established by the War Department is shown by the following statement:
“For transportation of freight:
At full tariff-rates.$83, 762 57
With 33J per cent, off for land-grant. 55,377 50
“ For transportation of passengers:
At full tariff-rates..... 19, 657 46
With 33J- per cent, off for land-grant... 13,312 53
Total, with 33^ per cent, off, $68,690.13.
“ IY. The defendants have not paid the claimant for the foregoing services, nor for any part thereof.”
The court being equally divided upon these facts, judgment pro forma for the purpose of an appeal was rendered in favor of the defendants, and the case was taken to the Supreme Court, where the judgment was reversed.
The mandate of the Supreme Court remanding the case was as follows:
“ It is now here ordered and adjudged by this court that the judgment of the said Court of Claims in this cause be, and the same is hereby, reversed. And it is further ordered that this cause be, and the same is hereby, remanded to the said Court *299 of Claims, with directions to enter a judgment in favor of the claimants, in conformity with the opinion of this court.”
The opinion referred to in the mandate was delivered in two cases, viz, in that of the Lake Superior and Mississippi Railroad Company v. The United States, (where a like judgment had been rendered,) and in the case now under consideration. The directions which it contained were as follows :
“The decrees of the Court of Claims in the several cases must be reversed and a new decree made in favor of the respective petitioners, in conformity with the principles of this opinion, that is to say, awarding to each of them compensation for all transportation performed by them, respectively, of troops and property of the Government, (excepting the mails,) subject to a fair deduction for the use of their respective railroads.”
On this mandate coming down from the Supreme Court, the claimants moved for judgment for the amount previously found by this court, that is to say, for judgment at the ordinary tariff-rates, less the deduction of one-third established by the War Department, as shown in the findings of fact hereinbefore set forth. The defendants not being fully advised as to the course they would pursue, the parties entered into the following stipulation :
“ It is agreed between the parties in the above-entitled case that judgment may be entered under the mandate of the Supreme Court in favor of the claimants for the sum of $68,690.13, the Government reserving the right to show that judgment for the amount above named is not required by the above mándate j hearing upon this question to be had as early as March 7, next, and, if the court shall so decide, the Government to have the right to try the question of what is a fair deduction to be made under the opinion of the Supreme Court, and the defendants reserving any rights they may have, if the Court of Claims decides that said judgment is required by the mandate.
“ THOMAS H. TALBOT,
“ Attorney for A., T. & S. F. R. R. Co.
“ THOMAS SIMONS,

‘ Assistant Attorney-General.”

Judgment was accordingly entered, and subsequently the defendants made the following motion :
“ The Assistant Attorney-General, on behalf of the defend *300 ants, prays the court that the judgment heretofore entered in the above case, to wit, the judgment entered the 28th day of February, A. D. 1877, for the sum of $68,690.13. in favor of the plaintiffs, be set aside and the case remanded to the general docket, for the reason that the said judgment of $68,690.13, entered the 28th day of February, A. D. 1877, is not required by the mandate of the Supreme Court of the United States in the above ease, issued January 15,1877, and filed in this court January 29, 1877.
“THOMAS SIMONS,

“Assistant Attorney- General.”

On this motion being heard the court made the following order:
“ Ordered, that the motion filed in this case on the 8th instant on behalf of the defendants, to set aside the judgment entered herein on the 28th of February last, be remanded to the law docket, with leave to the defendants to show to the satisfaction of the court, on or before Monday, the 26th instant, by affidavit or otherwise, that there is reasonable ground for entertaining said motion; in default whereof the said motion shall then stand overruled ; but if the court shall then be satisfied that such reasonable ground exists, the case shall be set down for hearing upon the .question, what, under the mandate of the Supreme Court, is a fair deduction from the compensation earned by the claimant for the services upon which this suit is based.”
The motion coming up again on the present hearing, the parties introduced as evidence, by stipulation, the opinions of a number, of eminent railroad experts to show what would be a fair deduction from the ordinary tariff-rates for the use of the/ road as directed by the Supreme Court. The leading opinion discussed at length the principles which should govern in ascertaining what would be a fair deduction for the use of a railroad as distinguished from the use of its rolling-stock, personal property, and transportation services as carrier, and from them deduced the following general

Formula.

“ Let x represent the amount to be deducted as a fair deduction for the use of the respective road] including maintenance of roadway; and
*301 a, the gross earnings of the road ;
b, the transportation expenses $
c, the maintenance expenses ;
d, the amount representing a fair sum for the use of the roadway, being a certain y>ercentage on the cost of the same;
e, the charges made for Government transportation : then,
a : b :: e : the amount to be retained by the company as a
re-imbursement for its outlay = — ; a
a : o :: e : the amount'to be deducted for Government for
the maintenance of roadway = —; a
a : cl : : e : the amount to be deducted for Government for
the sum representing a fair amount for use of the road = — : a
and therefore
— + — =*, the sum to be ascertained.” a a
This formula, when applied to the claimants’ road, gave as the deduction to be made from ordinary tariff-rates for the Government’s right to the use of the road about 78 per cent; applied to all the railroads of Massachusetts, it gave about 42 per cent. But the gentlemen who propounded the formula in a subsequent explanatory report said:
“ That the application of the formula to the (claimants’) company for the settlement of the claim now in court, based upon the figures as taken from this report, would be extremely unjust to the company, from the fact that in this, as in any other new road, the actual expenses for wear and tear do not appear in the expenses charged for several years, nor until renewals have to be made, while the expenses of such renewals belong proportionately in every year in use; and also in the’cost of roadway is included the entire discount on the bonds,-whiSh by rights should be distributed between the cost of roadway and equipment in proportion to the cost of each.” The same gentlemen at the same time further reported: “ That it would not be policy for the Government in its settlements with various roads for its transportation to apply this formula in each settlemént, but it would be better, on the other hand, first to apply the formula to various roads, estimating a fair division of the expenses from *302 the figures taken from their books, the cost of roadway iii comparison with the cost of equipment, and deduce therefrom a fair percentage to be applied as a perpetual rule in all settlements.”
Other opinions were given by other experts, all based more or less on the claimants’ reports and accounts, and fixing the percentage of deduction at different rates, varying from 15 to 42 per cent.
On these facts the court has reached the following conclusions :
The mandate of the Supreme Court in this case is not decisive in terms, but refers this court for guidance to the opinion of the court above. That opinion declares the right of these and of other claimants to recover for their services as carriers, “subject to a fair deduction for the use of their respective railroads,” which this court is directed to make. In regard to that opinion two things are to be observed: first, that it does not discuss or consider what is a fair deduction in this particular case; and, second, that the opinion was not dealing exclusively with this particular case, but was laying down a comprehensive rule equally applicable to all of these land-grant railways, and defining in the abstract the legal rights of such corporations in their relations with the Government.
Assuredly the Supreme Court could not have intended to hold that a fair deduction for the use of a road is a matter beyond the voluntary agreement of the parties; nor that in every such transaction they must come into this court to have the value of the deduction determined. And if the deduction may be a matter of agreement in the future, certainly it might have been in the past.
In this case the petition sets up the fact that the defendants, by their War Department, fixed upon a general rate of reduction, and that the claimants accepted the proffered terms and voluntarily performed accordingly. On their part it was not alleged that this reduction was arbitrary, illegal', or oppressive; and on the part of the defendants it was not alleged that any greater deduction should have been made. Eeither was it controverted on the trial that such was the action of the Government, nor wms the authority of its officers so to act questioned. The only issue tried between the parties in this court, and the only question argued in the court above, was as to the *303 ■claimants’ right to the balance, and that has been decided in their favor.
We, therefore, are of the opinion that in this case the best evidence of what a fair deduction is, is that furnished by the acts and pleadings of the parties. They have fixed it, so far as this action is involved, at 33J per cent.; judgment has been entered at the agreed rate, with the agreed reduction, and there the court should leave it. The question was not raised in the .Supreme Court; the objection was not taken there by the defendants; the attention of that court was not directed to the validity of a matter w'hich neither party disputed. Non constat but that if the deduction were to .be less, the War Department would have elected to run its own trains over the road; non ■constat but that if it were to be greater, the claimants would have altogether declined the service.
The evidence which has been introduced by the parties does not conflict with this conclusion, it is, indeed, inadmissible to ■determine the measure of damages in a suit like this. Its fallacy, from a legal — not from a scientific — point of view is in disregarding the strict legal rights of the parties, and in seeking to lay down an abstract, equitable system or formula which might by agreement govern the prospective dealings of two persons, and make them to a certain extent partners and participators in each other’s gains and losses. Every such scheme which these most intelligent railroad experts have proposed would make the rate of reduction more or less dependent on the skill, management, success, and even bookkeeping of the particular railway that chances to be the claimant in the suit. However philosophical or equitable such a mutual arrangement might be, did it exist, it is enough to say that it does not exist, and that it is not the legal test for determining the legal rights ■of these litigants.
The question to be determined, from a legal point of view, is not a difficult one to state, though from its novelty it may be a difficult one for either railroad experts or railroad managers to answer. A land-grant railway company comes into this court in two characters. It is the owner of a railroad, and a -carrier or transportation agent. For the use of its road it cau recover nothing; for its services as carrier it may recover what they were worth. Its ordinary tariff-rates embrace 'compensation for both; but here compensation for the use of the road is *304 to be deducted from them. What shall the deductiou be ? The Government had the right to use the road with the buildings, stations, depots, and all other things that are attached to and go with the real estate, without paying rent and without making repairs. What was that rig’ht at that time worth in the market, payable in a percentage of the gross earnings ? If a transportation company having the same tariff of rates had sought to run their trains over this road, and use its depots, stations, &c., what proportion of those tariff-rates would this company have been willing to take, and the other to pay, for that privilege ? Or, to state the question in another form : For what proportion of its gross earnings at the time of the service could this road have been leased, the tariff of charges being kept the same, the lessees furnishing •their own rolling-stock, personal property, and emplpyés, but the lessors making all repairs and renewals during the continuance of the lease ? Or, to state it yet again : For what reduction from those ordinary tariff-rates would another transportation company have carried the Government’s freights over the claimants’ road free from the ordinary obligation of paying rent, interest, or dividends on the road, and with no obligation to keep it in repair, it being at the same time assumed that the business thus furnished would be constant and sufficient to supply full trains running both ways ?
As this case now stands, the services were performed at the stipulated or ordinary tariff rates; an agreed deduction was made of 33|- per cent. $ judgment was entered by stipulation of parties for the balance remaining. The evidence produced on the motion to vacate that judgment indicates that if the entire case were re-opened, the pleadings disregarded, and the controversy taken up de novo, as though no terms had ever been imposed by the War Department, the deduction which would be made would fall short of that agreed upon, and the defendants be liable for a heavier judgment than that which they are seeking to set aside. Under these conditions of fact, the court is of the opinion that the evidence produced on the hearing of their motion does not show that there is reasonable ground for setting aside the judgment entered by stipulation on the 28th February, 1877.
The order of the court is, that, the defendants having failed to make it appear that the amount deducted for the use of the *305 road in the judgment entered in this case on the 28th February, 1877, was not a fair, deduction as required by the mandate of the Supreme Court, the motion to vacate such judgment is overruled.
Peck, J., did not sit in this case, and took no part in the decision.